IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00145-NYW-KAS

RUSSELL SINGLETARY

      Plaintiff,

v.

DR. SUSAN COURTNEY CONROY,
JUAN COLON, DDS,
BUREAU OF PRISONS, and
UNITED STATES OF AMERICA,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendants' **Partial Motion to Dismiss Second Amended Complaint (ECF No. 9)** [#29] (the "Motion"). Plaintiff filed a Response [#35] in opposition to the Motion [#29], and Defendants filed a Reply [#36]. The Motion [#29] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See Memorandum* [#30]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that the Partial Motion to Dismiss [#29] be **GRANTED**.

### I. Background[1]

Plaintiff, who proceeds in this matter pro se, is a convicted and sentenced federal prisoner held at FCI Englewood. *Second Am. Compl.* [#9] at 2. Defendant Susan Courtney Conroy ("Dr. Conroy") is a medical doctor employed by Defendant Bureau of Prisons (the "BOP") and Defendant Juan Colon ("Dr. Colon") is a dentist employed by the federal government. *Id.* at 2-3.

On July 14, 2022, Plaintiff reported to FCI Englewood's dental office for an extraction of two teeth. *Id.* at 5[2], ¶ 3. Dr. Colon "was unable to successfully remove [Plaintiff's] tooth for awhile [sic] and he began to pull forcefully on the tooth until [Plaintiff] was jerked out of the chair." *Id.* at ¶ 4. Plaintiff "felt a sharp pain in [his] neck whenever Dr. Colon jerked [his] body from the chair in his attempt to remove the tooth." *Id.* About three days later, Plaintiff's neck pain was so severe that he "went to sick call requesting treatment" where he was seen by a nurse, Amanda Garcia.[3] *Id.*, ¶ 5. Plaintiff told Nurse Garcia what had happened during his dental appointment, but he was not given pain medications or other treatment. *Id.*

Sometime in February 2023, Plaintiff "spoke to Dr. Conroy concerning [his] neck injury and [his] lack of treatment." *Id.*, ¶ 6. He told Dr. Conroy that since he had injured

---

[1] Unless otherwise stated, all facts in this section come from Plaintiff's Second Amended Complaint [#9] and are accepted as true for purposes of the Motion [#29]. *See, e.g.*, *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014) (stating that on a Rule 12(b)(6) motion the court must accept all well-pled factual allegations in the complaint as true). To the extent Plaintiff attempts to raise new facts or allegations in his Response [#35], Plaintiff may not amend his pleading through a response to a motion to dismiss. *Cf. Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206-07 (D. Colo. 2015) (citations omitted).

[2] Page numbers refer to the numbering stamped on the upper right of each page by the Court's docketing system, not to the document's original numbering.

[3] Nurse Garcia is not named as a defendant in this matter.

his neck, he had "lost feeling in [his] lips, suffered from numbness in [his] arms and hands, and [had] dizziness at times for no apparent reason." *Id.* Dr. Conroy "informed [Plaintiff] that she was going to order an MRI and did nothing else to treat [his] symptoms." *Id.* Plaintiff "made repeated trips to the Health Services Department . . . where [he] complained about [his] neck injury and symptoms (described above) to [his] primary care providers, Dr. Conroy and Nurse Garcia." *Id.*, ¶ 7. However, he alleges that neither Dr. Conroy nor Nurse Garcia ever provided him with any treatment for his neck injury. *Id.* at 6, ¶ 8.

Plaintiff also alleges that he is handicapped and confined to a wheelchair, but FCI Englewood "does not have a wheelchair ramp leading to the areas used for Psychology Services and the Recreation Area." *Id.*, ¶ 9. Because of this, Plaintiff is unable to use the recreational area and is unable to access mental health treatment. *Id.* When Plaintiff complained about his lack of access, he "was told by staff that there is an alternative route to access these areas and that, upon request, staff would ensure that [he] [is] able to access these areas." *Id.*, ¶ 10. However, Plaintiff has only been permitted to utilize this alternative route "two times in the last four years" because "[n]early every time [he] [tries] to access the 'alternate route' to these areas[,] the officers in charge of the prison compound refuse to permit [Plaintiff] to access the alternate route." *Id.*

Finally, Plaintiff submitted a Freedom of Information Act (FOIA), 5 U.S.C. § 552, request "that the BOP provide [him] with copies of all of [his] medical records in its possession." *Id.* at 7, ¶ 11. He claims that more than six months have passed since his FOIA request, but the BOP has not produced any of the requested records. *Id.*, ¶ 12.

Plaintiff lodges five claims against the Defendants: (1) a Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, negligence claim against the United States of America based on Dr. Colon's allegedly negligent treatment on July 14, 2022, which injured Plaintiff's neck; (2) an FTCA medical negligence claim against the United States of America based on Nurse Garcia and Dr. Conroy's alleged failure to treat his neck injury between July 15, 2022, and January 2023; (3) deliberate indifference to his serious medical needs under the Eighth Amendment against Dr. Conroy; (4) a violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, against the BOP regarding wheelchair access; and (5) a FOIA claim against the BOP. *Id.* at 4-7. Plaintiff seeks monetary damages against all Defendants, court costs, and "an injunction compelling the Bureau of Prisons to promptly conduct a search for records responsive to Plaintiff's FOIA request[.]" *Id.* at 10. Defendants move to dismiss Claims One through Four—all but his FOIA claim. *See Motion* [#29] at 1.

## II. Legal Standards

### A.    Rule 12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

A Rule 12(b)(1) challenge may take two different forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to

challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2013). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)). In such cases, a court may consider affidavits or other documents to resolve the jurisdictional question. *Id.* (citing *Holt*, 46 F.3d at 1003).

**B.    Rule 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

Defendants move to dismiss Plaintiff's Second Amended Complaint [#9], arguing that: (1) Claims One and Two (negligence and medical negligence) should be dismissed due to Plaintiff's failure to file a certificate of review; (2) Claim Three (deliberate indifference) should be dismissed to the extent Plaintiff attempts to state a *Bivens* claim against Dr. Conroy; (3) alternately, Claim Three should be dismissed because Dr. Conroy is entitled to qualified immunity; (4) Claim Four should be dismissed for lack of subject matter jurisdiction because (a) the government has not waived sovereign immunity for monetary damages under the Rehabilitation Act and (b) a wheelchair ramp has been constructed at FCI Englewood, rendering any claim for injunctive relief moot. *Motion* [#29] at 4-15. Defendants do not seek to dismiss Plaintiff's FOIA claim. *Id.* at 1.

### A.    Claims One and Two (Negligence and Medical Negligence)

Plaintiff's first two causes of action are FTCA claims asserted against the United States based on the alleged medical negligence of Dr. Colon and Dr. Conroy. *See Second Am. Compl.* [#9] at 4. Defendants argue that Colorado law required Plaintiff to timely file

a certificate of review because his medical negligence claims will require expert testimony. *Motion* [#29] at 4-6 (citing Colo. Rev. Stat. § 13-20-602). Because he has not filed a certificate, Defendants ask the Court to dismiss these two claims. *Id.*

The FTCA waives the United States' sovereign immunity for injuries caused by federal employees' negligent conduct "if a private person would be liable for the same conduct." *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1097-98 (10th Cir. 2015) (citing 28 U.S.C. § 1346(b)); *see also Haceesa v. United States*, 309 F.3d 722, 725 (10th Cir. 2002) ("Under the FTCA, the United States is liable for its tortious conduct in the same manner and to the same extent as a private individual under like circumstances in that jurisdiction would be liable.") (citing 28 U.S.C. §§ 1346(b), 2674). When a plaintiff sues the United States under the FTCA, state substantive law applies. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004).

In particular, the Tenth Circuit has held that Colorado's certificate of review statute applies to professional negligence claims brought under the FTCA. *Id.*; *Cestnik v. Fed. Bureau of Prisons*, 84 F. App'x 51, 53-54 (10th Cir. 2003) (affirming dismissal of pro se plaintiff's FTCA medical negligence claim for failure to file a certificate of review); *see also Coleman v. United States*, 803 F. App'x 209, 212-14 (10th Cir. 2020) (confirming that Colorado's certificate of review statute applied to an FTCA professional negligence claim but remanding for the district court to determine whether such a certificate was required in the instant case).

Under Colorado law, a plaintiff asserting a professional negligence claim must file a certificate of review within 60 days after service of his complaint. *See* Colo. Rev. Stat. § 13-20-602(1)(a). The plaintiff must certify that he has "consulted a person who has

expertise in the area of the alleged negligent conduct" and that the consulted professional "has reviewed the known facts" and "has concluded that the filing of the claim . . . does not lack substantial justification." Colo. Rev. Stat. § 13-20-602(3)(a). "The requirement applies to any claim against a licensed professional that is based upon allegations of professional negligence and that requires expert testimony to establish a prima facie case[.]" *Williams v. Boyle*, 72 P.3d 392, 397 (Colo. App. 2003). The statute "should be broadly read and applied" and it applies to pro se plaintiffs. *Id.* (applying rule to pro se litigant); *Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002) (same). Finally, the district court must, upon the defendant's motion, dismiss a claim that requires a certificate of review if the plaintiff fails to comply with the statute. *Cf. Woo v. Baez*, 522 P.3d 739, 745 (Colo. App. 2022) (citing Colo. Rev. Stat. § 13-20-602(4)).

In most cases, expert testimony is required to establish a prima facie case of professional negligence. *Cf. Williams*, 72 P.3d at 397. "When a plaintiff's claim requires a showing that the licensed professional breached a duty of care and that duty of care cannot be understood by a lay person without expert testimony, the claim requires a certificate of review." *Id.* (citing *Martinez v. Badis*, 842 P.2d 245, 249 (Colo. 1992); *Armbruster v. Edgar*, 731 P.2d 757 (Colo. App. 1986)).

The certificate of review statute also applies where expert testimony is required to prove causation of injury. Where a plaintiff alleged that she had suffered kidney damage due to a physician's negligent medication prescription, a certificate of review was required because a lay person could not draw a causal connection between the prescribed medication and the alleged injury without expert testimony, especially where other possible causes could not be eliminated. *Williams*, 72 P.3d at 398. On the other hand,

under principles of *res ipsa loquitur*, "where the cause of injury is so apparent that a lay person is as able as an expert to conclude that such things do not happen in the absence of negligence," expert testimony is not required. *Id.* Ultimately, determining whether a certificate of review is required in a specific case is within the trial court's discretion. *See, e.g.*, *Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 627 (Colo. 1999) (reviewing for abuse of discretion the trial court's finding that a certificate of review was not required in the instant case); *Greenwell v. Gill*, 660 P.2d 1305, 1307 (Colo. App. 1982).

Here, the Court finds that expert testimony is required to establish a prima facie case of professional negligence as to both Dr. Colon and Dr. Conroy.

### 1. Claim One (Dr. Colon)

As for Claim One, Plaintiff alleges that Dr. Colon "was unable to successfully remove [his] tooth for awhile [sic] and he began to pull forcefully on the tooth until [Plaintiff] was jerked out of the chair" and "[t]he tooth [was] broken in half by the dental tool that he was using." *Second Am. Compl.* [#9] at 5, ¶ 4. Establishing a prima facie professional negligence claim will require expert testimony on the duty of care a dentist owes in attempting to remove a tooth—i.e., how much force a reasonable dentist would use, understanding that the procedure necessarily involves use of at least some force. A lay person would not be able to determine whether Dr. Colon used an unreasonable amount of force simply by the fact that Plaintiff was "jerked out of the chair" and the tooth was broken in half. This is not a *res ipsa loquitur* case where negligence can be presumed because Plaintiff suffered an injury. *Cf. Smith v. Trujillo*, No. 20-cv-00877-RBJ-NYW, 2021 WL 1799400, at *11 (D. Colo. Mar. 26, 2021) ("[A] poor outcome is insufficient to

prove negligence.") (citing *Day v. Johnson*, 255 P.3d 1064, 1069 (Colo. 2011)), *report and recommendation adopted*, 2021 WL 1608829 (D. Colo. Apr. 26, 2021). Under the circumstances, the Court finds that Claim One requires expert testimony on the duty of care owed and how Dr. Colon breached that duty of care. *Cf. Woo*, 522 P.3d at 746.

### 2. Claim Two (Dr. Conroy)

The same is true of Claim Two against Dr. Conroy. Plaintiff alleges that about three days after his injury, he was seen by Nurse Garcia but was not given pain medications or other treatment. *Second Am. Compl.* [#9] at 5, ¶ 5. He alleges that in February 2023, he spoke to Dr. Conroy regarding his neck injury and that he said he "lost feeling in [his] lips, suffered from numbness in [his] arms and hands, and [had] dizziness at times for no apparent reason." *Id.*, ¶ 6. At that visit, Dr. Conroy "informed [him] that she was going to order an MRI," though Plaintiff does not say if or when that MRI was taken. *Id.* Moreover, Plaintiff does not say whether or how often he sought treatment from Dr. Conroy between July 15, 2022, and February 2023, nor does he allege any details about his current condition or what impact the alleged denial of care had on his condition.

Given this lack of detail, the Court finds that proving a prima facie case on the claims as pleaded would require expert testimony. A lay person would not be as able as an expert to determine whether it was reasonable for Dr. Conroy to order an MRI and offer no other treatment, given Plaintiff's description of numbness and intermittent dizziness. Additionally, expert testimony would be required to establish causation, i.e., that Dr. Conroy's alleged failure to treat Plaintiff's neck injury caused him to incur damages. As pleaded, Claim Two would require expert testimony to establish a prima facie case. *Cf. Woo*, 522 P.3d at 746.

### 3. Conclusion

Because the Court finds that both of Plaintiff's medical negligence claims require expert testimony to establish applicable standards of care (and that Claim Two additionally requires expert testimony to establish causation), he was required to file a certificate of review. *See Williams*, 72 P.3d at 397. Defendants have moved to dismiss based on his failure to file a certificate, and under Colorado law, the Court must grant Defendants' request. *See* Colo. Rev. Stat. § 13-20-601(4) (stating that failure to comply with the certificate statute "*shall* result in the dismissal of the complaint").[4] However, the Tenth Circuit has suggested (by reference to several district court cases) that dismissals for failure to comply with Colorado's certificate of review statute generally should be without prejudice. *Coleman*, 803 F. App'x at 214 (citing *Alpine Bank v. Hubbell*, No. 05-cv-00026-EWN-PAC, 2007 WL 218906, at *4-6 (D. Colo. Jan. 26, 2007); *Carson v. United States*, No. 13-cv-02962-CMA-KLM, 2014 WL 3563021, at *8 (D. Colo. July 18, 2014); *Morales v. Rattan*, No. 17-cv-03009-PAB-KLM, 2019 WL 588192, at *6 (D. Colo. Feb. 13, 2019)). Therefore, the Court **recommends** that Claims One and Two be **dismissed without prejudice** for failure to comply with Colorado's certificate of review statute, Colo. Rev. Stat. § 13-20-601(1)(a).

---

[4] The Court acknowledges that Plaintiff's Motion for Appointment of Expert Witness [#32] was denied in part because Plaintiff's claims were "not overly complex or scientific" and "[t]he alleged mechanism of injury is fairly straightforward" as to Dr. Colon. *See Order* [#40] at 4. However, a court finding that professional negligence claims "lack complexity" when considering whether to appoint an expert *does not* require a finding that the claims are so straightforward that Colorado's certificate of review requirement is inapplicable. *Cf. Cestnik v. Fed. Bureau of Prisons*, 84 F. App'x 51, 53-54 (10th Cir. 2003) (affirming district court's refusal to appoint an expert "[g]iven the relative lack of complexity of [the plaintiff's] case" while also affirming the dismissal of his complaint for failure to file a certificate of review).

**B.    Claim Three (Eighth Amendment Deliberate Indifference)**

Claim Three is a purported individual-capacity *Bivens* claim against Dr. Conroy for deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's Eighth Amendment rights. *See Second Am. Compl.* [#9] at 2-3 (checking box for *Bivens* claim as to a federal official), 4 (asserting Claim Three against Dr. Conroy). Defendants argue that Plaintiff fails to state a cognizable *Bivens* claim and that Dr. Conroy is entitled to qualified immunity. Because the Court agrees that Plaintiff has not stated a cognizable *Bivens* claim, it need not consider qualified immunity.

In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court found an implied cause of action for monetary damages directly under the Fourth Amendment against federal agents who allegedly manacled a man and threatened his family during a warrantless arrest that lacked probable cause. *Id.* at 389-90, 397. In the following decade, the Court recognized just two other constitutionally implied causes of action: a Fifth Amendment remedy where an administrative assistant sued a congressman for firing her because she was a woman; and an Eighth Amendment remedy where a prisoner's estate sued federal corrections officers for failing to treat his asthma, leading to his death. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

Since that time, the Supreme Court has changed its "approach to recognizing implied causes of action" and, consequently, "the *Bivens* remedy is now a 'disfavored'

judicial activity." *Id*. at 135. Per the more recent Supreme Court precedent, courts apply a two-part test to determine whether a *Bivens* remedy exists. *See Rowland v. Matevousian*, 121 F.4th 1237, 1242-43 (10th Cir. 2024) (applying two-part test). First, a court considers whether the case before it presents a new *Bivens* context; in other words, whether the case is "meaningfully different" from *Bivens*, *Davis*, and *Carlson*. *Egbert v. Boule*, 596 U.S. 482, 492 (2022); *Rowland*, 121 F.4th at 1242-43 (cautioning that "even 'significant parallels to one of the [Supreme] Court's previous *Bivens* cases' may not be enough to show that a case arises in the same context") (quoting *Ziglar*, 582 U.S. at 147).

Second, if the claim arises in a new context, the court considers whether "special factors" indicate that Congress is arguably in a better position than courts to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136); *Rowland*, 121 F.4th at 1243-44. The Supreme Court has observed that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id*.; *see also Rowland*, 121 F.4th at 1244 (commenting that "Congress will always be suited to make such a call" because "recognizing a *Bivens* action improperly" encroaches upon the "separation of legislative and judicial power"). Finally, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137).

Here, Plaintiff's claim and those in *Carlson* appear loosely similar because both cases involved allegations of deliberate indifference to an inmate's medical needs under the Eighth Amendment. However, the differences abound. In *Carlson*, the allegations included:

- "Prison officials acted against the doctor's orders by keeping the plaintiff in a medical facility that was known to be 'gross[ly] inadequate'";

- "The prisoner did not receive 'competent medical attention for . . . eight hours after he had an asthma attack'";

- "The prisoner was 'administered "contra-indicated drugs which made [his] attack more severe'";

- "Prison officials attempted to use a respirator known to be inoperative which further impeded the plaintiff's breathing"; and

- "The plaintiff died as a result."

*Rowland*, 121 F.4th at 1243 (emphasis omitted) (quoting *Carlson*, 446 U.S. at 16 n.1).

Here, Plaintiff's allegations are significantly different, with the most obvious difference being that the prisoner in *Carlson* died. "Additionally, Plaintiff does not allege that Defendant Conroy or Nurse Garcia (1) acted contrary to doctors' orders; (2) administered contraindicated drugs; or (3) kept him in a facility that was "grossly inadequate." To the extent Defendant Conroy and Nurse Garcia ignored his requests for medical treatment or waited to provide care, that presents a new *Bivens* context. *See, e.g.*, *Rowland*, 121 F.4th at 1243 (finding that deliberate indifference claim for inadequate care of a hernia arose in a new *Bivens* context); *Ward v. McGaugh*, No. 23-cv-00233-NYW-MDB, 2025 WL 385593, at *2, *4-5 (D. Colo. Feb. 4, 2025) (finding that deliberate

indifference claim for delayed care for a burn arose in a new *Bivens* context and recommending dismissal).

Because Plaintiff's claim arises in a new *Bivens* context, the Court must next consider whether special factors counsel against recognizing a new *Bivens* claim. The Court resolves that question in the affirmative; Congress has "authorized the Executive to provide[ ] an alternative remedial structure," *Egbert*, 596 U.S. at 493, which exists in the form of the BOP's Administrative Remedy Program. *Rowland*, 121 F.4th at 1244 (quoting *Silva*, 45 F.4th at 1141 (holding that the "availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose [the p]laintiff's *Bivens* claim."); *see also Noe v. United States Gov't.*, No. 23-1025, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) (dismissing plaintiff's Eighth Amendment deliberate indifference claim arising from allegedly inadequate dental care because "the [Administrative Remedy Program], which *Silva* says is an adequate alternative remedy, is available to [the plaintiff].") This "is reason enough" to decline "to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493 (internal quotation marks omitted); *see also Silva*, 45 F.4th at 1141.

Here, Plaintiff does not dispute that the Administrative Remedy Program is available to him; in fact, he alleges that he pursued administrative remedies on all his current claims before filing suit. *See Second Am. Compl.* [#9] at 7, ¶ 13 (alleging that Plaintiff "exhausted all of his available administrative remedies in accordance with the law and any relevant BOP policy for all of the above indicated causes of action"). The Administrative Remedy Program offered Plaintiff an adequate alternative remedy, so the Court must decline to extend a *Bivens* remedy. *Cf. Rowland*, 121 F.4th at 1244 ("Since

[the plaintiff's] case presents a new *Bivens* context, and a remedial scheme already exists to address his complaint, [his] *Bivens* claim fails.").

In summary, because Plaintiff's case presents a new *Bivens* context, and an adequate alternative remedy already exists to address his complaint, his *Bivens* claim fails. The Court therefore **recommends** that Claim Three be **dismissed with prejudice**. *See, e.g.*, *Silva*, 45 F.4th at 1142 (affirming district court's dismissal of purported Eighth Amendment *Bivens* claim with prejudice); *Ward*, 2025 WL 385593, at *6 (recommending dismissal with prejudice of the plaintiff's Eighth Amendment deliberate indifference *Bivens* claim).

## C.    Claim Four (Rehabilitation Act)

Plaintiff, who is confined to a wheelchair, alleges that Defendant Bureau of Prisons violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794, by denying him accessibility to the prison's recreation area and the area where psychology services is located. *See Second Am. Compl.* [#9] at 6, ¶ 9 (alleging, in present tense, that Plaintiff is "unable to access" recreation-area services and that prison staff have only allowed him to use an "alternate route" twice in four years); *id.* at 10 (seeking monetary damages against all Defendants); *Response* [#35] at 3 (invoking "Section: 504 Rehabilitation Act"). Although Plaintiff does not expressly seek injunctive relief for this claim, his Second Amended Complaint [#9] frames the denial of access to services in the present tense and Defendants addressed injunctive relief in their Motion [#29]. *Id.* at 6, ¶ 9; *Motion* [#29] at 14-15. Liberally construing Plaintiff's pro se filings, the Court will consider both monetary and injunctive relief as to Claim Four.

1.    **Monetary Damages**

Defendants argue that monetary damages are unavailable under the Rehabilitation Act because the United States' sovereign immunity has not been waived as to that statute. *See Motion* [#29] at 14 (citing *Lane v. Pena*, 518 U.S. 187, 192-97 (1996); *Holdsworth v. Stoneburner*, 134 F.3d 382 (10th Cir. 1998) (table)). Plaintiff does not address this argument in his response; instead, he argues that the recent construction of a wheelchair ramp "does not erase the emotional pain and ang[u]ish suffered that took place, particularly the concern was being confined for COVID 19[.]" *Response* [#35] at 3.

While the Court sympathizes with Plaintiff's difficulties in being denied access to important services for more than two years while in prison, it must follow binding Supreme Court precedent. In *Lane v. Pena*, the Supreme Court resolved a circuit split over "the important question whether Congress has waived the Federal Government's immunity against monetary damages awards for violations of § 504(a) of the Rehabilitation Act." *Lane*, 518 U.S. at 191. *Lane* answered that question in the negative: "[t]he clarity of expression necessary to establish a waiver of the Government's sovereign immunity against monetary damages for violations of § 504 is lacking in the text of the relevant provisions." *Id.* at 192.

*Lane* has not been overruled and the Court is bound to follow it, as other courts in this Circuit have done. *See, e.g.*, *Harris v. Sec'y of U.S. Dep't of Veterans Affs.*, No. 2:23-cv-02285-HLT-BGS, 2023 WL 6976059, at *4 (D. Kan. Oct. 23, 2023) (stating that "the Rehabilitation Act does not allow claims for monetary damages against the federal government") (citing *Lane*, 518 U.S. at 191-97); *Brown v. Cantrell*, No. 11-cv-00200-PAB-MEH, 2012 WL 4050300, at *1 (D. Colo. Sept. 14, 2012) (stating that "to the extent plaintiff

asserts a Section 504 claim for damages against defendants in their official capacities,

the United States has not waived its sovereign immunity over such claims") (citing same).

Accordingly, the Court **recommends** that Plaintiff's Claim Four (Rehabilitation Act)

be **dismissed without prejudice** to the extent he seeks monetary damages from the

Bureau of Prisons. *See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. City of

Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity

grounds or for lack of standing must be without prejudice.").

### 2. Injunctive Relief

Defendants argue that any Rehabilitation Act claim for injunctive relief is now moot

because a wheelchair ramp has been constructed, pointing to a Bureau of Prisons

engineering technician's sworn declaration. *See Motion* [#29] at 14-15; *Decl. of White*

[#29-1].[5] On August 21, 2024, Engineering Technician Joshua White declared under oath

that "a dual wheelchair ramp project was completed on or about February 1, 2024, and is

currently available for use by inmates." *Decl. of White* [#29-1], ¶ 3. He avers that the new

ramp "provides wheelchair access to various parts of the institution such as education,

recreation, and psychology." *Id.*, ¶ 4. For his part, Plaintiff admits that "[i]n 2024 the prison

completed a[n] access ramp to those areas." *Response* [#35] at 3.

Mootness is a threshold jurisdictional issue "because the existence of a live case

or controversy is a constitutional prerequisite[.]" *Disability Law Ctr. v. Millcreek Health

Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005) (quoting *McClendon v. City of Albuquerque*, 100

---

[5] Because Defendant's mootness argument is a "factual attack" on the Court's subject matter
jurisdiction, the Court may consider the White Declaration without converting the Rule 12(b)(1)
motion into a summary judgment motion. *Cf. Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th at 507
(stating that "[i]n such instances, a court has discretion to consider affidavits and other documents
to resolve the jurisdictional question" without converting the motion to dismiss to a summary
judgment motion) (citing *Holt v. United States*, 46 F.3d at 1003).

F.3d 863, 867 (10th Cir. 1996)); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) (stating that the federal courts "have no subject-matter jurisdiction if a case is moot"). "Generally, a claim for prospective injunction becomes moot once the event to be enjoined has come and gone." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014); *see also Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 882 (10th Cir. 2019) (deeming request for injunction to deliver 11 rejected publications moot because the Bureau of Prisons had already delivered the publications).

Here, Plaintiff admits—and the White Declaration confirms under penalty of perjury—that the Bureau of Prisons has built a wheelchair ramp that allows inmates like Plaintiff access to the recreation area and psychology services. *See Response* [#35] at 3; *Decl. of White* [#29-1], ¶¶ 3-4. This directly addresses Plaintiff's concerns that he is "not able to utilize the recreation area" and that he is "unable to access all of the various program[s] and services offered by the Psychology Department that the able-bodie[d] inmates are able to access," mooting any claim for injunctive relief. *Cf. Citizen Ctr.*, 770 F.3d at 907. To the extent that Plaintiff seeks injunctive relief under the Rehabilitation Act, there is no longer a live case or controversy for the Court to address and the Court lacks subject matter jurisdiction. *Cf. Rio Grande Silvery Minnow*, 601 F.3d at 1116.

Accordingly, the Court **recommends** that Plaintiff's Claim Four (Rehabilitation Act) be **dismissed without prejudice** as moot to the extent he seeks injunctive relief. *See, e.g.*, *Wee v. President of the United States*, No. 14-CV-0506-CVE-TLW, 2014 WL 5035291, at *3 (N.D. Okla. Oct. 8, 2014) (finding claims moot and dismissing without

prejudice for lack of subject matter jurisdiction); *Whiteshirt v. Begay*, No. 08-cv-03270-CMA-KMT, 2008 WL 5248981, at *1 (D. Colo. Dec. 16, 2008) (same).

**IV. Conclusion**

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendants' Partial Motion to Dismiss [#29] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that Claims One (Negligence – Dr. Colon), Two (Medical Negligence – Dr. Conroy), and Four (Rehabilitation Act) be **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **RECOMMENDED** that Claim Three (Eighth Amendment *Bivens* – Dr. Conroy) be **DISMISSED WITH PREJUDICE**.[6]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and

---

[6] If this Recommendation is adopted in full, only Claim Five (FOIA) will remain.

recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: February 11, 2025                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge